UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                 :

DONTE MCCLELLON,                   :

                                 :

                     Plaintiff,    :

                                 :                   25-CV-2988 (VSB)

           - against -             :

                                 :                 **OPINION & ORDER**

                                 :

UNITED STATES OF AMERICA,      :

                                 :

                     Defendant.   :

                                 :
------------------------------------------------------------X

<u>Appearances</u>:

Donte McClellon
Seattle, WA
*Pro se Plaintiff*

Leslie A. Ramirez-Fisher
United States Attorney's Office, SDNY
New York, NY
*Counsel for Defendant*

<u>VERNON S. BRODERICK</u>, United States District <u>Judge</u>:

      On April 9, 2025, *pro se* Plaintiff Donte McClellon ("Plaintiff" or "McClellon") filed this

action against Defendant United States of America (the "Government" or "Defendant") alleging

damages under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*").  (Doc. 1 ("Complaint"

or "Compl.").)  Currently before me is Defendant's motion to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, (Doc. 17),

Plaintiff's motion for a preliminary injunction and temporary restraining order, (Doc. 10), and

Plaintiff's motion for leave to file a supplemental statement and addendum to the Complaint,

(Doc. 31).  Because I find that I lack subject matter jurisdiction, Defendant's motion to dismiss is GRANTED, and Plaintiff's Complaint is DISMISSED without prejudice and with leave to file an amended complaint within 30 days of this Opinion & Order.  Moreover, Plaintiff's motion for a preliminary injunction and temporary restraining order and his motion for leave to file a supplemental statement and addendum to his Complaint are DENIED as moot.

## I.    **Factual and Procedural Background**[1]

On May 20, 2022, Plaintiff was indicted in the United States District Court for the Western District of Washington.  *See United States v. McClellon*, No. 22-CR-73 (W.D. Wash.), Doc. 6 (May 20, 2022).  On January 11, 2024, after a jury trial in the Western District of Washington, Plaintiff was found guilty on three counts of wire fraud and two counts of bank fraud, all in connection with fraudulent Paycheck Protection Program loan applications through which Plaintiff obtained almost $500,000 during the COVID-19 pandemic.  *See generally id.*, Doc. 6 (May 20, 2022), Doc. 252 (Jan. 11, 2024).  On May 29, 2024, McClellon was sentenced to 42 months' imprisonment, followed by 36 months of supervised release, and ordered to pay $490,840.92 in restitution.  *See id.*, Doc. 299 (May 29, 2024).

During his imprisonment, Plaintiff was housed at various locations, including SeaTac Federal Detention Center in Seattle, Washington ("SeaTac") and the Federal Correctional Institution in Otisville, New York ("FCI Otisville").  (Compl. ¶ 1.)  During his incarceration at FCI Otisville, Plaintiff filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his federal sentence.  *See McClellon v. Rickard*, No. 24-CV-10053, Doc. 1 (Dec.

---

[1] The following facts are drawn from the allegations in Plaintiff's April 9, 2025 Complaint, (Doc. 1), which are assumed true for the purposes of this Opinion & Order, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), and the documents about "which plaintiffs had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

20, 2024).  Specifically, he alleged that the Bureau of Prisons ("BOP") failed to properly calculate his earned-time credits and reduce his sentence based on completion of these programs. *Id.*  On March 11, 2026, I denied Plaintiff's habeas petition.  *Id.*, Doc. 50 (Mar. 11, 2026). Plaintiff has since appealed this denial to the Second Circuit.  *Id.*, Doc. 52 (Mar. 25, 2026). Plaintiff also has a pending Ninth Circuit appeal seeking to vacate his conviction and sentence. (Compl. ¶ 6.)

On April 9, 2025, Plaintiff filed this instant action, which was accepted to my docket as related to *McClellon v. Rickard*, No. 24-CV-10053.  First, Plaintiff asserts under the FTCA that BOP officials negligently miscalculated his sentence and failed to timely release him.  (Compl. ¶¶ 15–16.)  Plaintiff argues that he "is entitled to sentence reductions based on Good Conduct Time (6 months), First Step Act credits (12 months), and the Residential Drug Abuse Program (RDAP) credits (12 months)."  (*Id.* ¶ 7.)  Plaintiff contends that he should have been released in or around January 2024, but he was instead "wrongfully incarcerated for an additional 16 months due to the negligence and unconstitutional actions of BOP officials."  (*Id.* ¶¶ 9–10.)  Plaintiff "filed and exhausted his administrative remedies regarding the improper delay in release," but his applications "were denied or ignored."  (*Id.* ¶ 11.)  Because of his wrongful incarceration, Plaintiff suffered "severe work-related injuries, failure to protect [sic], defamation, waterboarding tactics, excessive force, coerced signing under duress, violation under the Prison Rape Elimination Act (PREA), medical deliberate indifference, significant financial loss, lost job opportunities, unpaid labor, emotional distress, severe anxiety, anguish, and pain and suffering." (*Id.* ¶ 13.)  Second, under *Bivens*, Plaintiff also alleges violations of his rights under the Due Process Clause of the Fifth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment.  (*Id.* ¶¶ 20–35.)  He seeks compensatory damages up to $2.9 million,

3

additional damages for wrongful incarceration at a rate of $1,000 to $5,000 per day, and punitive damages. (*Id.* at 5–6.)

On July 10, 2025, Plaintiff filed a motion for a preliminary injunction ("PI") and a temporary restraining order ("TRO") seeking his "immediate release from BOP custody and relocation to the Southern District of New York from the Western District of Washington for [the] supervised release portion of [his] sentence." (Doc. 10 at 1.) An identical copy of this motion was also filed in Plaintiff's related habeas case. (*See McClellon*, No. 24-CV-10053, Doc. 31 (July 10, 2025).) On July 15, 2025, I directed the Government to respond to the motion by July 25, 2025. (Doc. 11.) On July 24, 2025, I granted the Government's request to vacate my order directing Defendant to respond to Plaintiff's PI and TRO motion, instead setting a briefing schedule for Defendant's anticipated motion to dismiss. (Doc. 14.) On July 25, 2025, I directed the Clerk of Court to mail the relevant briefing schedule and order to Plaintiff at Victorville Medium II FCI, 13777 Air Expressway Blvd, Victorville, CA 92394 and update Plaintiff's address of record on the docket, because it was not clear whether *pro se* Plaintiff received these documents. (Doc. 16.) That same day, on July 25, 2025, I also referred the action for general pretrial purposes to Magistrate Judge Barbara C. Moses. (Doc. 15.)

On August 15, 2025, Defendant filed a motion to dismiss for lack of jurisdiction, (Doc. 17), an accompanying declaration, (Doc. 18), and a supporting memorandum of law, (Doc. 20). On October 1, 2025, Plaintiff was released from BOP custody "as homeless and sent to the Western District of Washington." (Doc. 28 at 1.) On October 7, 2025, in response to Plaintiff's October 3, 2025 letter regarding a notice of change of address and a request for a 60-day extension, (Doc. 25), I issued an order updating Plaintiff's address of record and extending his deadline to respond to Defendant's complaint until November 24, 2025. (Doc. 26.) On

November 24, 2025, Magistrate Judge Moses acknowledged that Plaintiff had "been moved to several different federal facilities in recent months, requiring the Court to mail the government's motion papers (and other documents) to him several times," and that while Plaintiff is "computer-literate" and "has been following the progress of this action on Pacer," his mailing issues warranted a *sua sponte* extension of his opposition deadline to December 15, 2025. (Doc. 29 at 1–2.) However, Magistrate Judge Moses warned that "[n]o further extensions of this deadline will be granted absent compelling circumstances." (*Id.* at 2 (emphasis in original).) Moreover, Magistrate Judge Moses also denied Plaintiff's motion for appointment of pro bono counsel. (*Id.* at 2–3.) That same day, on November 24, 2025, Plaintiff filed his "motion for leave to file a supplemental statement / addendum to complaint and add plaintiffs." (Doc. 31 at 1.)[2] In this brief, Plaintiff seeks to "clarify[]" issues "raised by Defendant['s] pending Motion to Dismiss." (*Id.*)[3] On November 30, 2025, Plaintiff consented to receiving electronic service through the court's ECF system. (Doc. 32.)

---

[2] Plaintiff contends that he did not receive a copy of Defendant's motion to dismiss and that he prepared his motion for leave to file a supplemental statement and addendum using a previous letter from the Government previewing its arguments in its motion and "pacermonitor.com (free resources)." (Doc. 31 at 2.) I am aware that because Plaintiff's location changed multiple times during the pendency of this litigation, he had issues with the service of some papers in this case. (*See* Doc. 29.) However, after setting a December 15, 2025 extension deadline, Magistrate Judge Moses noted that "[n]o further extensions of this deadline will be granted absent compelling circumstances." (*Id.* at 2.) Because I am granting Plaintiff leave to amend his complaint and am not dismissing his complaint with prejudice at this juncture, and because Plaintiff styles his motion for leave to supplement as a partial opposition, I am issuing this Opinion and Order without providing Plaintiff another extension to file an opposition.

[3] "We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)D (internal quotation marks omitted). Thus, even though Plaintiff did not style his motion for leave to file a supplemental statement and addendum to the Complaint as an opposition brief, I read certain arguments as responding to Defendant's motion to dismiss.

## II.    Legal Standard

### A.  *12(b)(1): Subject Matter Jurisdiction*

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks omitted). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted).

"Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under Rule 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first." *Coniglio v. Garland*, 556 F. Supp. 3d 187, 194 (E.D.N.Y. 2021) (citation modified); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (internal quotation marks omitted)).

6

### B. *Pro Se Litigants*

A "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a *pro se* party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Nevertheless, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (alteration and internal quotation marks omitted).

### III.   Discussion

### A. *Federal Tort Claims Act*

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). "[T]he existence of [such] consent is a prerequisite for jurisdiction" over claims against the United States. *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003) (internal quotation marks omitted). The FTCA is one such waiver of sovereign immunity and provides for a cause of action for injuries arising from the tortious conduct of federal officers or agents acting within the scope of their office or employment. 28 U.S.C. § 1346(b)(1). Before bringing an FTCA claim in federal district court, a claimant must first exhaust his administrative remedies by filing a claim for monetary damages with the appropriate federal government entity. *See* 28 U.S.C. § 2675(a). The FTCA's administrative exhaustion process for tort claims is different from the facility grievance process under the BOP's Administrative Remedy Program (ARP). *See, e.g.*, *Jiminez v. United States*, No. 11-CV-4593, 2013 WL 1455267, at *5 (S.D.N.Y. Mar. 25, 2013) ("[T]he

7

exhaustion requirements under the FTCA are different from those required for a *Bivens* action. Specifically, a plaintiff seeking to assert a claim under the FTCA must first file a Form SF–95 with the relevant BOP regional office.").

An administrative claim under the FTCA must be in writing and filed within two years of accrual of the claim.  28 U.S.C. §§ 2401(b), 2675(a).  A claimant may challenge the Government's final denial in federal district court by filing an action within six months of the mailing of the notice of final denial by the federal entity.  *See id.* § 2401(b).  If no written final determination is made by the federal entity within six months of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in federal district court.  *See id*. § 2675(a).  The FTCA requirement that a claimant present an administrative claim before filing a complaint in federal district court "is jurisdictional and cannot be waived."  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021) ("[T]he waiver [of sovereign immunity] is subject to a jurisdictional prerequisite: a tort action 'shall not be instituted . . . against the United States for money damages . . . unless the claimant shall have first *presented* the claim to the appropriate Federal agency' for its review." (quoting 28 U.S.C. § 2675(a)) (emphasis in original)).

Consistent with other subject matter jurisdiction inquiries, "the burden is on [the] plaintiff to demonstrate subject matter jurisdiction in compliance with the FTCA's requirements." *Dowdy v. Hercules*, No. 07-CV-2488, 2010 WL 169624, at *5 (E.D.N.Y. Jan. 15, 2010) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)); *see also Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004) (clarifying that the exhaustion "procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se*").  Moreover, a plaintiff asserting an FTCA claim not only has the burden to prove exhaustion, but also to plead

8

it affirmatively in his complaint.  *See Fiore v. Medina*, No. 11-CV-2264, 2012 WL 4767143, at *6 (S.D.N.Y. Sept. 27, 2012) ("Before a district court can exercise jurisdiction over a plaintiff's FTCA claim, that plaintiff must first 'plead and prove compliance' with the FTCA's exhaustion requirements." (citing *In re "Agent Orange"*, 818 F.2d at 214)); *see also Thomas v. Metro. Corr. Ctr.*, No. 09-CV-1769, 2010 WL 2507041, at *5–7 (S.D.N.Y. June 21, 2010).  Indeed, "[t]he 'exhaustion' requirement does not require only that a would-be plaintiff present an FTCA claim to the relevant agency before filing suit; it requires that the agency process be *completed*." *Phillips v. United States Postal Serv.*, No. 23-819, 2024 WL 1613897, at *2 (2d Cir. Apr. 15, 2024) (emphasis in original)).  In other words, "[t]he FTCA requires exhaustion to be completed *before filing suit*, not after."  *Id.* (emphasis in original).

Here, Plaintiff claims that he "filed and exhausted his administrative remedies regarding the improper delay in release."  (Compl. ¶ 11.)  In other words, Plaintiff alleges that he filed a Form SF–95 with the relevant BOP regional office regarding his release-date claim.  Plaintiff provides no further details regarding this exhaustion process in his Complaint.  However, because I must construe *pro se* submissions liberally, I may also consider "factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint."  *Ahmed v. GEO USA LLC*, No. 14-CV-7486, 2015 WL 1408895, at *1 (S.D.N.Y. Mar. 27, 2015).  In his subsequent motion for leave to file a supplemental statement and addendum to the Complaint, which is partially styled as an opposition, Plaintiff contends that his administrative tort claims were all "filed in or around April 1, 2025" and that his claims "have since been denied, or at a minimum, *constructively* denied by the agencies' failure to respond within six months, thereby satisfying the FTCA's exhaustion requirement."  (Doc. 31 at 6 (emphasis in original).)

9

However, even if Plaintiff followed the requirements to file an administrative claim by the beginning of April 2025, he filed this action on April 9, 2025—well before the claim was actually exhausted.[4]  While Plaintiff's submission of his claim to the BOP "may have *started* the administrative process," "it did not *complete*, and, therefore, *exhaust* that process."  *Phillips*, 2024 WL 1613897, at \*2 (emphasis in original).  Plaintiff himself acknowledges that among the "six claims" "presented to the appropriate agency by [an] SF-95" form," each of them were exhausted, or constructively denied, by October 1, 2025, (Doc. 31 at 16)—almost six months after Plaintiff filed the instant action.  The law is clear that "if a plaintiff files an FTCA claim in federal court prematurely—before the administrative process has been exhausted—the claim should be dismissed, even if it might become ripe . . . during the pendency of the action." *Phillips*, 2024 WL 1613897, at \*2; *see also Cuello v. Lindsay*, No. 09-CV-4525, 2011 WL 1134711, at \*10 (E.D.N.Y. Mar. 25, 2011) ("[P]laintiff filed the instant federal Complaint subsequent to filing an administrative tort claim, but prior to fully exhausting the BOP administrative process . . . [and] [w]hile plaintiff ultimately exhausted his administrative remedies on January 13, 2010, when his tort claim was denied by the BOP, he did so during the pendency of the present federal litigation.  Supreme Court and Second Circuit precedent make clear that the subsequent denial of an administrative claim cannot cure a prematurely filed FTCA action."); *Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) ("The requirement that prematurely filed FTCA claims be dismissed holds even when, as here, the FTCA claims would be ripe if re-filed at the date of the court's decision."); *Tarafa v. B.O.P. MDC Brooklyn*, No. 07-

---

[4] An accompanying declaration to Defendant's motion to dismiss alleges that the BOP Office of General Counsel Litigation Branch only received Plaintiff's FTCA administrative claim on May 8, 2025 and denied Plaintiff's claim on June 26, 2025.  (Doc. 18 ¶¶ 8–10.)  Regardless of these factual inconsistencies, this discrepancy in dates regarding when Plaintiff filed his administrative claim does not change my finding that Plaintiff still did not exhaust his claims before filing this action on April 9, 2025.

CV-554, 2007 WL 2120358, at *3 (E.D.N.Y. 2007) ("[A]lthough it is the court's view that dismissing [plaintiff's] FTCA claim and requiring him to refile is the ultimate exercise of form over substance, this court must dismiss [plaintiff's] FTCA claim under the Supreme Court's dictates in *McNeil*.") (citing *McNeil v. United States,* 508 U.S. 106, 112–13 (1993)).  Indeed, the fact that Plaintiff is acting *pro se* does not alter this outcome.  *See McNeil*, 508 U.S. at 113 ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Thus, because Plaintiff failed to administratively exhaust his FTCA claim before this action was filed, failing to show a waiver of sovereign immunity, I lack subject matter jurisdiction over Plaintiff's FTCA claim.  However, because these claims are dismissed for lack of jurisdiction, Plaintiff's FTCA claim is dismissed without prejudice and I grant Plaintiff leave to amend his complaint to replead this claim.  *See Faculty v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) (explaining that a dismissal for lack of jurisdiction "must be without prejudice rather than with prejudice"); *see also Cuello*, 2011 WL 1134711, at *10 (dismissing plaintiff's FTCA claims without prejudice because of a failure to administratively exhaust claims and "with leave to re-file.")

### B.  *Bivens Claim*

The U.S. Supreme Court has recognized the availability of a *Bivens* action—or an implied private right of action for damages against federal officers—in three contexts:  (1) a violation of the Fourth Amendment, arising from an unreasonable search and seizure, *Bivens*, 403 U.S. 388 (1971); (2) a violation of the Due Process Clause of the Fifth Amendment, in the employment discrimination context, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) a violation of the Eighth Amendment, arising from inadequate medical treatment of a convicted prisoner,

11

*Carlson v. Green*, 446 U.S. 14 (1980). However, the Supreme Court has "made [it] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

The purpose of an implied *Bivens* action for damages "is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). This means that a *Bivens* claim will lie only against an individual in a personal capacity, and not against the United States, a federal agency or against federal officials in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) ("[W]e implied a cause of action against federal officials in *Bivens* in part *because* a direct action against the Government was not available." (citing *Bivens*, 403 U.S. at 410 (Harlan, J., concurring) (emphasis in original)); *see also Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.").

Here, the United States is the sole defendant in this action. Sovereign immunity bars federal courts from hearing suits against the United States, except where that immunity has been waived. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). "*Bivens* claims do not lie against federal employees in their official capacities, because such suits are considered actions against the United States, and are barred by the doctrine of sovereign immunity." *Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr. – N.Y.*, 594 F. Supp. 3d 559, 567–68 (S.D.N.Y. 2022). Plaintiff's claims for damages under *Bivens* against the United States for the alleged constitutional violations must therefore be dismissed without prejudice because he does not identify any waiver of sovereign immunity, and the United States is therefore immune from suit on Plaintiff's constitutional claims. However, as further articulated below, I give Plaintiff

leave to replead his *Bivens* claim and name individual defendants if such a claim would be cognizable and he chooses to do so.

### C.  *Leave to Amend*

Plaintiff moves for leave to supplement or add an addendum to his Complaint to clarify venue, discuss the administrative exhaustion of his FTCA claims, and add additional parties, among other reasons.  (*See generally* Doc. 31.)  Plaintiff proceeds in this matter *pro se*.  "The court should freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile."  *Pagan v. Midhudson Forensic Psychiatric Hosp.*, No. 23-CV-10050, 2024 WL 182763, at \*3 (S.D.N.Y. Jan. 16, 2024).  The "permissive standard" of Rule 15 "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam).  Moreover, "dismissals for lack of subject matter jurisdiction must be without prejudice, rather than with prejudice."  *Ceccarelli v. Morgan Stanley Priv. Bank, N.A.*, No. 25-443-CV, 2025 WL 2992528, at \*4 (2d Cir. Oct. 24, 2025) (summary order) (internal quotation marks omitted).  If Plaintiff exhausted his FTCA claims before bringing an amended complaint, as he contends, Plaintiff may be able to allege additional facts to state a valid claim.[5]

Moreover, I give Plaintiff leave to replead his *Bivens* claims with new individual defendants, so that he may proffer additional details about the constitutional violation and the

---

[5] Although I grant Plaintiff leave to amend his complaint, I do not consider the merits of Plaintiff's FTCA claim at this stage, including whether the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) prevents Plaintiff from pursuing his FTCA claim for damages.  *See, e.g.*, *Cox v. New York State*, No. 23-CV-0060, 2023 WL 2770368, at \*8 (N.D.N.Y. Apr. 4, 2023) ("*Heck* applies to bar FTCA actions that imply the invalidity of a conviction."), *report and recommendation adopted*, 2023 WL 6862505 (N.D.N.Y. Oct. 18, 2023).

alleged roles of the individual officers. While Plaintiff does not provide any of these details in his complaint, his motion for leave to file a supplemental statement and addendum to his Complaint provides additional information about these potential officers and the alleged Eighth Amendment violation while he was incarcerated at FCI Otisville.  (Doc. 31 at 7, 25.)  Moreover, even if their identities are currently unknown, under *Valentin v. Dinkins*, a *pro se* litigant is entitled to assistance from the district court in identifying a defendant. 121 F.3d 72, 76 (2d Cir. 1997); *see also Cruz v. Fed. at I.C.M. Manhattan, N.Y.*, No. 20-CV-4392, 2020 WL 6049190, at *2 (S.D.N.Y. Oct. 13, 2020) (finding that Plaintiff supplied sufficient information in the complaint to permit the BOP to identify individual employees and directing United States Attorney for the Southern District of New York to ascertain the "full and correct identities" of "each of the individual defendants whom Plaintiff seeks to sue here").  Thus, I grant Plaintiff 30 days from the date of this Opinion & Order to amend his complaint consistent with this decision.

## IV.    Conclusion

Defendant's motion to dismiss, (Doc. 17), is GRANTED, and Plaintiff's Complaint, filed in forma pauperis under 28 U.S.C. § 1915(a)(1), is dismissed without prejudice for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), with 30 days' leave to replead.  Plaintiff's motion for a preliminary injunction and temporary restraining order, (Doc. 10),[6] and his motion for leave to file a supplemental statement and addendum, (Doc. 31), are DENIED as moot, and the Clerk of Court is directed to terminate these motions.

---

[6] Since I am "dismissing Plaintiff['s] claims for lack of [jurisdiction], [his] motion seeking a preliminary injunction is denied as moot." *Medicaid Consumers for Continuity of Care v. McDonald*, No. 25-CV-00565, 2025 WL 1224189, at *12 (S.D.N.Y. Apr. 24, 2025); *see also Am. Ass'n of Univ. Professors v. United States Dep't of Just.*, No. 25-CV-2429, 2025 WL 1684817, at *14 (S.D.N.Y. June 16, 2025) ("[T]his case must be dismissed without prejudice for lack of subject matter jurisdiction . . . [and] [a]s such, "the court *cannot* consider the merits of the preliminary injunction motion." (internal quotation marks omitted) (emphasis in original)); *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 121 (2d Cir. 2025) (finding that district courts "*cannot* consider the merits of [a] preliminary injunction motion and should dismiss the claim altogether" if they determine that a plaintiff's legal theory "doom[s] the plaintiff's standing" (emphasis in original)).

14

I certify under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:        March 31, 2026
              New York, New York

Vernon S. Broderick
United States District Judge